IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| MICHAEL KATTAWAR; and MICHAEL KATTAWAR, SR., | ) ) ) | |
| Plaintiffs, | ) ) | No. 14-2701-STA-cgc |
| v. | ) ) | |
| LOGISTICS AND DISTRIBUTION SERVICES, INC; and ROSS KLINE, | ) ) ) | |
| Defendants. | ) | |

### ORDER GRANTING IN PART, DENYING IN PART DEFENDANTS' MOTION TO DISMISS

Before the Court is Defendants Logistics and Distribution Services, Inc. and Ross Kline's Motion to Dismiss (ECF No. 10) filed on October 3, 2014. Plaintiffs Michael Kattawar and Michael Kattawar, Sr. have filed a response in opposition, and Defendants have filed a reply. For the reasons set forth below, Defendants' Motion to Dismiss is **GRANTED IN PART, DENIED IN PART**.

### BACKGROUND

On September 11, 2014, Plaintiffs filed a Complaint alleging breach of contract, unjust enrichment, and negligent misrepresentation against Defendants. For purposes of the Motion to Dismiss, the Court accepts the following well-pleaded factual allegations of the Complaint as true. Up until August 2013, Plaintiff Michael Kattawar was the president of Eagle Worldwide Transportation, Inc. ("Eagle"), a Memphis, Tennessee-based logistics company, and Plaintiff Michael Kattawar, Sr. was a member of the company. (Compl. ¶¶ 5, 6.) Defendant Logistics and

1

Distribution Services, Inc. ("Logistics") is a logistics and trucking company based in Reno, Nevada. (*Id.* ¶ 7.) Defendant Ross Kline is the president of Logistics and a resident of Reno, Nevada. (*Id.* ¶ 8.)

In 2013, Logistics purchased virtually all of Eagle's assets pursuant to an asset purchase agreement dated June 27, 2013, and amended July 24, 2013 ("the purchase agreement"). (*Id.* ¶ 5.)[1] Logistics purchased Eagle for the purpose of taking over Eagle's asset-based, for-hire motor carrier truckload, flatbed, special haul, and refrigerated transportation services throughout the United States. (*Id.* ¶ 7.) As part of the purchase agreement, Logistics entered into separate consulting agreements with both Plaintiffs on August 19, 2013 ("the consulting agreements"). (*Id.* ¶¶ 5, 6.)[2] Defendant Ross Kline was the primary point of contact between Plaintiffs and Logistics in connection with the negotiation of the purchase agreement and the consulting agreements. (*Id.* ¶ 8.) Kline insisted on the use of the consulting agreements as a means to facilitate Logistics' purchase of Eagle over a period of time as well as to provide tax benefits to Logistics. (*Id.* ¶ 6.)

The Complaint alleges that as an integral part of the overall transaction memorialized in the purchase agreement, Logistics entered into consulting agreements with each Plaintiff. (*Id.* ¶ 9.) In consideration for his consulting services, Logistics agreed to pay Plaintiff Michael Kattawar $21,280.00 per month for 45 months from May 1, 2014, through January 1, 2018, for total compensation of $957,600.00. (*Id.*) Likewise, Logistics agreed to pay Michael Kattawar, Sr. $6,720.00 per month for consulting services for 45 months from May 1, 2014, through

---

[1] Plaintiffs have attached a copy of the purchase agreement as Exhibit 1 to the Complaint (ECF No. 1-4).

[2] Plaintiffs have attached a copy of each consulting agreement as Exhibits 2 and 3, respectively, to the Complaint (ECF Nos. 1-5,1-6).

January 1, 2018, for total compensation of $302,400.00. (*Id.* ¶ 10.) The consulting agreements provided for $1.26 million in total payments to Plaintiffs. (*Id.* ¶ 11.) Eagle and Logistics bargained for these payments under the consulting agreements in conjunction with the purchase agreement, and Plaintiff's compensation for consulting services represented a substantial portion of what Logistics believed was Eagle's fair value ($1.75 million to $2 million). (*Id.*)[3] That is, Eagle would not have entered into the purchase agreement without the consulting agreements. (*Id.*) Plaintiffs reasonably relied upon the representations of Defendants regarding their financial capacity and condition to honor the consulting agreements. (*Id.*)

From August 2013 through the present, Logistics has controlled Eagle's assets and business operations, and Eagle has honored and continues to honor the purchase agreement. (*Id.* ¶ 12.) For their part Plaintiffs provided the services agreed upon in the consulting agreements. (*Id.*) For example, Plaintiffs have sought to bring customers to Eagle, though Logistics has utilized Eagle to service the logistics needs of Nestlé, its primary client. (*Id.*) In April 2014, Kline, acting on behalf of Logistics, notified Michael Kattawar that Logistics would not be able to meet its payment obligations to Plaintiffs. (*Id.* ¶ 13.) Even though Plaintiffs expressed to Kline their interest in renegotiating the consulting agreements, Defendants took no steps whatsoever to do so. (*Id.*) At Plaintiffs' request, Michael Kattwar and Kline met in August 2014 to discuss the potential renegotiation of the consulting agreements. (*Id.* ¶ 14.) Kline reiterated that Logistics had no money to fulfill the obligations to Plaintiffs under the consulting agreements and would not have the funds for the foreseeable future. (*Id.*) Kattawar responded that Plaintiffs expected to be paid. (*Id.*)

---

[3] The Complaint adds that Logistics retained an independent consultant and an attorney as part of its own due diligence on Eagle and its financial condition. (Compl. ¶ 11.) Logistics's consultant opined that Eagle had a value of between $1.75 million and $2 million. (*Id.*)

Rather than attempt a renegotiation of the consulting agreements, Logistics communicated to Plaintiffs through counsel that Plaintiffs were in breach of the consulting agreements based on (a) "material neglect" of their duties to provide consulting services and (b) various breaches of the purchase agreement that were never previously discussed with Plaintiffs. (*Id.* ¶ 15.) By copy of this correspondence, Logistics informed Plaintiffs that it was terminating the consulting agreements.[4] (*Id.*) Plaintiffs deny that they have breached the consulting agreements and allege that Logistics wrongfully terminated the consulting agreements. (*Id.* ¶ 16.) According to the Complaint, Logistics terminated the consulting agreements because Logistics did not have the financial resources to honor the agreements. (*Id.*) Kline misrepresented Logistics financial condition to Plaintiffs and its ability to honor the consulting agreements at the time the parties entered into the agreements. (*Id.*)

Based on these fact pleadings, Plaintiffs allege claims for breach of the consulting agreements and unjust enrichment against Logistics and negligent misrepresentation against Logistics and Kline. In their Motion to Dismiss, Defendants argue that Plaintiffs have failed to state any claim for relief. First, Defendants contend that Plaintiffs have not stated a claim for negligent misrepresentation against either Defendant because the Complaint fails to satisfy Rule 9's pleading requirements that any claim sounding in fraud be alleged with particularity. With respect to the negligent misrepresentation claim against Defendant Ross Kline, Defendants argue that at all times relevant, Kline was acting in his official capacity as president of Logistics, not in his individual capacity. With respect to the negligent misrepresentation claim against Defendant Logistics, the parties' agreements specified that Plaintiffs were not relying on any representations made by Logistics, which were not otherwise memorialized in their contracts.

---

[4] Plaintiffs have attached a copy of the termination letter as Exhibit 4 to the Complaint (ECF No. 1-7).

As a result, the Court should dismiss the negligent misrepresentation claims against both Defendants.

Second, Defendants contend that Plaintiffs have failed to state a claim for breach of contract. The Complaint does not allege any breach of the purchase agreement despite certain fact allegations about the relationship of the purchase agreement to the consulting agreements. The two agreements were completely separate and independent of each other. The Complaint also fails to allege how Logistics breached the consulting agreements. Logistics had the contractual right to terminate the consulting agreements for cause and exercised that right for Plaintiffs' failure to perform. Plaintiffs were not entitled to any further payments once Defendants properly terminated the contracts. Third, Defendants contend that Plaintiffs have failed to state a claim for unjust enrichment because there was an express, written contract. Defendants further argue that Plaintiffs have failed to allege that consideration was lacking, an essential element of the unjust enrichment claim. Therefore, the Court should dismiss the Complaint in its entirety.

Plaintiffs have responded in opposition to the Motion to Dismiss. Plaintiffs answer that they have plausibly alleged a breach of contract based on Defendants' wrongful termination of the consulting agreements. According to the pleadings, Defendants terminated the consulting agreements for Plaintiffs' material breach of the agreements even though Plaintiffs performed all duties under the consulting agreements. As for the unjust enrichment claim, Plaintiffs contend that they have pleaded the claim in the alternative to the breach of contract claim. As such, the Court should reject Defendants' argument that the claim will not lie because the parties had an express, written contract. And the Complaint alleges that consideration was lacking, Defendants' argument to contrary notwithstanding. Eagle had a reasonable value of between

5

$1.75 million and $2 million. The purchase agreement provided for a purchase price of only $300,000, with an additional $1.26 million owed to Plaintiffs under the consulting agreements. Thus, Logistics will be unjustly enriched by its wrongful termination of the consulting agreements. As for the negligent misrepresentation claim, Plaintiffs argue that the Complaint states a claim against Logistics and against Kline in his individual capacity. Plaintiffs allege that Defendants misrepresented the financial stability of Logistics and nevertheless negotiated to structure the transaction for Logistics to make payments to Plaintiffs over a period of time. The contracts' integration clauses should not bar the negligent misrepresentation claim. Nothing in the agreements addressed Logistics' financial ability to meets its obligations under the contracts. Plaintiffs further argue that Kline is liable for his own tortious conduct, even if he committed the tortious acts while negotiating as the agent of Logistics. Therefore, the Court should deny the Motion to Dismiss.

Defendants have filed a reply brief in support of their Motion to Dismiss. Defendants emphasize that the purchase agreement and consulting agreements are separate contracts. The Court should reject then Plaintiffs' theory that payments due under the consulting agreements were consideration for Logistics' purchase of Eagle. The purchase agreement clearly provided that the "aggregate consideration" for Eagle and its assets was $300,000. Plaintiffs' breach of contract claim essentially seeks to increase the consideration Defendants gave for Eagle and its assets by counting the sums due under the consulting agreements as part of the purchase price. Defendants argue the plain terms of the contracts refute Plaintiffs' claim and that the parol evidence rule applies to block Plaintiffs from introducing any other evidence concerning the parties' intent. Thus, Plaintiffs have failed to state a claim for breach of contract or unjust enrichment.

And even if Plaintiffs have alleged a claim for breach of the consulting agreements, Plaintiffs have not stated a claim for damages. Defendants reiterate the point from their opening brief that Plaintiffs were only due payments under the consulting agreements for consulting services they actually provided. As such, Plaintiffs could only possibly recover damages for services they already performed. Concerning the negligent misrepresentation claims, Defendants also repeat their arguments that Plaintiffs have not stated such a claim with particularity and that the negligent misrepresentation claim is contradicted by the consulting agreements' integration clauses. For theses reasons the Court should dismiss Plaintiffs' Complaint.

## **STANDARD OF REVIEW**

A defendant may move to dismiss a claim "for failure to state a claim upon which relief can be granted" under Federal Rule of Civil Procedure 12(b)(6). When considering a Rule 12(b)(6) motion, the Court must treat all of the well-pleaded allegations of the pleadings as true and construe all of the allegations in the light most favorable to the non-moving party.[5] However, legal conclusions or unwarranted factual inferences need not be accepted as true.[6] "To avoid dismissal under Rule 12(b)(6), a complaint must contain either direct or inferential allegations with respect to all material elements of the claim."[7] Under Rule 8 of the Federal Rules of Civil Procedure, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[8] Although this standard does not require "detailed

---

[5] *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Saylor v. Parker Seal Co.*, 975 F.2d 252, 254 6th Cir. 1992).

[6] *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).

[7] *Wittstock v. Mark a Van Sile, Inc.*, 330 F.3d 899, 902 (6th Cir. 2003).

[8] Fed. R. Civ. P. 8(a)(2).

factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."[9] In order to survive a motion to dismiss, the plaintiff must allege facts that, if accepted as true, are sufficient "to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face."[10] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[11]

## ANALYSIS

### I. Choice of Law

As a threshold matter, a federal court sitting in diversity applies the law of the forum state, including the forum's choice-of-law rules.[12] Generally, Tennessee follows the rule of *lex loci contractus*, meaning that "a contract is presumed to be governed by the law of the jurisdiction in which it was executed absent a contrary intent" such as a valid contractual choice-of-law provision.[13] In cases where the parties' contract contains a choice-of-law provision, the Court will honor the parties' choice to apply the laws of another jurisdiction if the following conditions are met: (1) their choice-of-law provision must be executed in good faith; (2) their

---

[9] *Ashcroft v. Iqbal,* 556 U.S. 662, 681 (2009); *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007). *See also Reilly v. Vadlamudi*, 680 F.3d 617, 622 (6th Cir. 2012) (quoting *Twombly,* 550 U.S. at 555).

[10] *Twombly*, 550 U.S. at 555, 570.

[11] *Iqbal,* 556 U.S. at 678.

[12] *Atl. Marine Constr. Co. Inc. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 134 S. Ct. 568, 582 (2013); *Standard Fire Ins. Co. v. Ford Motor Co.*, 723 F.3d 690, 692 (6th Cir. 2013).

[13] *Se. Texas Inns, Inc. v. Prime Hospitality Corp.*, 462 F.3d 666, 672 (6th Cir. 2006) (applying Tennessee law); *Ohio Cas. Ins. Co. v. Travelers Indem. Co.*, 493 S.W.2d 465, 467 (Tenn. 1973).

chosen jurisdiction must bear a material connection to the transaction; (3) the basis for their choice of jurisdiction must be reasonable and not a sham; and (4) the choice of the jurisdiction must not be contrary to the fundamental policy of a state having a materially greater interest and whose law would otherwise govern.[14]

The parties in this case agree that the substantive law of the state of Nevada governs Plaintiffs' claims against Defendants. Both the purchase agreement and the consulting agreements contain choice-of-law provisions, stating that Nevada law will govern the interpretation and enforcement of the parties' contracts.[15] Based on the concession of the parties to apply Nevada law, the Court will assume at the pleadings stage that Nevada law governs the parties' dispute.

## II. Breach of Contract

The first count of the Complaint alleges a breach of contract claim based on Logistics's failure to honor the consulting agreements. Under Nevada law, in order "[t]o prove a breach of contract, the plaintiff must show an existing valid agreement with the defendant, the defendant's material breach, and damages."[16] The Court holds that Plaintiffs have easily pleaded these elements to make out their claim against Logistics for breach of the consulting agreements. The Complaint alleges that each Plaintiff entered into a valid agreement with Logistics to provide consulting services with Logistics to pay Plaintiffs a total of $1.26 million over a period of 45

---

[14] *Goodwin Bros. Leasing, Inc. v. H & B, Inc.*, 597 S.W.2d 303, 306 (Tenn. 1980).

[15] Purchase Agreement § 9.10, ex. 1 to Compl. (ECF No. 1-4); Consulting Agreements § 14, ex. 2 & 3 to Compl. (ECF Nos. 1-5, 1-6).

[16] *Brochu v. Foote Enters., Inc.*, No. 55963, 2012 WL 5991571, at *5 (Nev. Nov. 29, 2012) (citing *Saini v. Int'l Game Tech.*, 434 F. Supp. 2d 913, 919–20 (D. Nev. 2006); *Bernard v. Rockhill Dev. Co.*, 734 P.2d 1238, 1240 (Nev. 1987)).

months. Plaintiffs were to begin receiving monthly payments from Logistics in May 2014. Before Plaintiffs received the first payment, Logistics informed Plaintiffs in April 2014 that it would not be able to make the payments as agreed, thereby breaching the terms of the consulting agreements and denying Plaintiffs the benefit of their bargain under the agreements. The Complaint goes on to allege that Logistics wrongfully terminated the consulting agreements in August 2014. The Court concludes that these allegations state a plausible claim for breach of contract under Nevada law.

In their Motion to Dismiss, Defendants maintain that any possible breach of the consulting agreements could not constitute a breach of the purchase agreement as a matter of law. According to Defendants, Plaintiffs have attempted to state a claim for breach of the purchase agreement by improperly conflating the purchase agreement and the consulting agreements. The purchase agreement was an entirely separate, wholly integrated contract which provided for a purchase price of $300,000 for Eagle and its assets. The Court finds this argument unpersuasive. The Complaint does not plead a breach of the purchase agreement but only alleges that Logistics "has breached and continues to breach the Consulting Agreements."[17] It is true that the Complaint alleges that the consulting agreements were executed "as part of" the purchase agreement "as a means to facilitate the purchase of Eagle by [Logistics] over time"[18] and as "an integral part of the overall transaction."[19] Plaintiffs also allege that "Eagle would not have entered into the [purchase] Agreement but for [Logistics] entering into the Consulting

---

[17] Compl. ¶ 19.

[18] *Id.* ¶¶ 5, 6.

[19] *Id.* ¶¶ 9, 10.

Agreements."[20] Strictly speaking, however, none of these averments plausibly allege a breach of the purchase agreement.

Perhaps more importantly, it is obvious from the terms of the purchase agreement itself that the purchase agreement and the consulting agreements were structured to facilitate a single transaction, Logistics's acquisition of Eagle. The purchase agreement plainly states that as a condition precedent to the closing of the purchase transaction, Logistics was to deliver to Plaintiffs "Consulting and Non-Competition Agreements executed by the respective parties,"[21] and Plaintiffs were to enter "into a Consulting and Non-Competition Agreement with [Logistics] containing mutually agreeable terms."[22] The purchase agreement further stated that in the event less than 42 of Eagle's drivers were determined to be "qualified" within 10 days of closing, Logistics would reduce the "aggregate" consulting payments owed to Plaintiffs under the consulting agreements by $5,000.00 for every driver for which Eagle fell short.[23] Finally, the purchase agreement stated that "[t]his Agreement, *the other agreements* and documents referenced herein, *collectively* set forth the entire understanding of the parties hereto with respect to the transactions contemplated hereby."[24] The plain, unambiguous language of the purchase agreement belies Defendants' theory that the purchase agreement and the consulting agreements were not part and parcel of the same transaction between the parties. Therefore, Defendants' contention that the purchase agreement and the consulting agreements are distinct and

---

[20] *Id.* ¶ 11.

[21] Purchase Agreement § 5.2.5(d), ex. 1 to Compl. (ECF No. 1-4).

[22] *Id.* at § 5.1.9.

[23] *Id.* at § 7.8.

[24] *Id.* at § 9.6 (emphasis added).

independent of one another has no bearing on whether the Complaint plausibly alleges a breach of the consulting agreements.

Defendants next argue that the Complaint fails to state a breach of contract claim because Defendants terminated the consulting agreements and thereafter Plaintiffs were no longer entitled to compensation for services they did not provide. Each consulting agreement provided that Plaintiffs were to undertake the following duties:

> (i) advising [Logistics], to the extent specifically requested by [Logistics]; (ii) assisting [Logistics] in maintaining relationships with, and freight volumes from, Eagle Worldwide's Business customers; (iii) assisting [Logistics] in maintaining relationships with vendors, employees and drivers (both employee and independent contractors); and (iv) referring shippers or other parties seeking over-the-road transportation services to be performed by an asset based motor carrier to [Logistics]. As a consultant, Consultant may perform his consulting work for [Logistics] in the manner he wishes consistent with the terms of this Agreement.[25]

The Complaint alleges that prior to Logistics' decision to terminate the contracts, Plaintiffs "provided the services agreed upon in the Consulting Agreements," including attempts "to bring customers to Eagle."[26] Accepting these allegations as true, Plaintiffs had performed under the consulting agreements. What is more, nothing in the well-pleaded allegations of the Complaint suggests that Defendants had cause to terminate the consulting agreements. The contracts defined several occurrences as events of material breach, which would give either party the right to early termination of the consulting agreements upon written notice to the other party.[27] The Complaint does not set forth any allegations amounting to a material breach of the consulting agreements by Plaintiffs, and Defendants' contention that Plaintiffs breached the agreements first

---

[25] Consulting Agreements § 2, ex. 2 & 3 to Compl. (ECF Nos. 1-5, 1-6).

[26] Compl. ¶ 12.

[27] Consulting Agreements § 5, ex. 2 & 3 to Compl. (ECF Nos. 1-5, 1-6).

is arguably an affirmative defense for which Defendants will bear the burden of proof. Therefore, Defendants' argument that Logistics rightfully terminated the contracts for cause is not well-taken at the pleadings stage.

Defendants also cite Nevada case law for the proposition that "Plaintiffs cannot recover for the services they have not yet performed" and argue that Plaintiffs have therefore failed to allege damages for consulting services they had not performed. This argument is without merit for two reasons. The Nevada Supreme Court decision cited by Plaintiffs to support this argument concerned damages under a contract terminable at-will.[28] In *Road and Highway Builders v. North Nevada Rebar*, the Nevada high court held that a party to a contract terminable at-will could not recover future lost profits as an element of damages for breach of contract.[29] By contrast, the consulting agreements in the case at bar are not terminable at-will but enumerate specific incidents of material breach which would entitle either party to terminate the agreements early for cause. Nothing in the consulting agreements suggest a right to terminate the agreements at any time and for any reason.[30] Defendants' reliance on *Road and Highway Builders* is misplaced.

Moreover, the Complaint plausibly alleges that Plaintiffs seek damages, at least in part, for duties they had already performed. According to the terms of the consulting agreements,

---

[28] *Rd. & Highway Builders v. N. Nev. Rebar*, 284 P.3d 377, 379 (Nev. 2012) ("Builders was granted the absolute right to terminate at any time and for any reason, and the parties expressly agreed that, in the event of such a termination, NNR's sole remedy would be payment for the work that it had performed up to the termination date.").

[29] *Id.* at 382 (citing *Dalton Props., Inc. v. Jones*, 683 P.2d 30, 31 (Nev. 1984) and Restatement (Second) of Contracts § 347 )).

[30] *See* Black's Law Dictionary (9th ed. 2009) (defining "at will" as "subject to one's discretion; as one wishes or chooses; esp. (of a legal relationship), able to be terminated or discharged by either party without cause <employment at will>").

Plaintiffs were to begin their consulting work on the effective date of the contracts, August 19, 2013; however, Plaintiffs were not entitled to their first payments under the contracts until May 1, 2014.[31] The Complaint alleges that Logistics did not have the funds to make the May 1, 2014 payment and terminated the agreements in August 2014. Construed together and in a light most favorable to Plaintiffs, these allegations state a claim for damages for services already rendered.

Having concluded that the Complaint states a plausible claim for breach of the consulting agreements, Defendants' Motion to Dismiss is **DENIED** as to this issue.

### III. Unjust Enrichment

Plaintiffs next allege that Logistics will be unjustly enriched if Logistics retains Eagle and its assets for only $300,000.00. Under Nevada law, unjust enrichment, or quasi-contract, consists of the following elements: "a benefit conferred on the defendant by the plaintiff, appreciation by the defendant of such benefit, and acceptance and retention by the defendant of such benefit under circumstances such that it would be inequitable for him to retain the benefit without payment of the value thereof."[32] Put another way, unjust enrichment occurs when "a person has and retains a benefit which in equity and good conscience belongs to another."[33]

Plaintiffs have alleged that they received only $300,000.00 in consideration for Eagle and its assets, a business concern with a fair market value of at least $1.75 million. The parties structured their transaction with three separate contracts: the purchase agreement and the consulting agreements each Plaintiff signed with Logistics. The purchase agreement provided

---

[31] Consulting Agreements §§ 1, 4, ex. 2 & 3 to Compl. (ECF Nos. 1-5, 1-6).

[32] *Leasepartners Corp. v. Robert L. Brooks Tr. Dated Nov. 12, 1975*, 942 P.2d 182, 187 (Nev. 1997) (citations omitted).

[33] *Id.*

14

for Logistics to make a payment of $300,000.00, and the consulting agreements provided for $1.26 million total in payments from Logistics to Plaintiffs for consulting services. After Logistics acquired Eagle and its assets, Logistics wrongfully terminated the consulting agreements and made none of the payments due thereunder. The Complaint alleges that under the circumstances Logistics stands to retain Eagle but without giving full value for the company. The Court holds that the Complaint has alleged a plausible, alternative claim against Logistics for unjust enrichment.

Defendants argue that these allegations fail to state a claim for unjust enrichment because the parties had express, written contracts covering the same subject matter. It is true that "[a]n action based on a theory of unjust enrichment is not available when there is an express, written contract, because no agreement can be implied when there is an express agreement."[34] In other words, a claim of unjust enrichment is inconsistent with a claim for breach of an express contract. Nevertheless, Federal Rule of Civil Procedure 8(d)(3) permits a party to "state as many separate claims or defenses as it has, regardless of consistency."[35] Even though Plaintiffs have alleged that the parties had fully-executed written contracts, Plaintiffs have plausibly alleged an alternative, though inconsistent, claim for unjust enrichment. In support of the claim, Plaintiffs rely on Exhibit 4 to the Complaint, an August 25, 2014 letter addressed to Plaintiffs from Logistics's attorney and advising that Logistics was terminating the consulting agreements ("the termination letter"). According to the termination letter, Logistics took the position that each consulting agreement was not enforceable owing to Plaintiffs' otherwise unspecified "fraudulent

---

[34] *Id.* (quoting 66 Am. Jur. 2d *Restitution* § 6 (1973)).

[35] Fed. R. Civ. P. 8(d)(3).

15

representations."[36] As an exhibit to the Complaint, the termination letter is properly considered part of the pleadings for purposes of Rule 12(b)(6).[37] In light of Logistics's position that the parties had no enforceable written agreement, the Court will permit Plaintiffs to pursue its alternative theory of unjust enrichment.[38] Therefore, Defendants' Motion to Dismiss is **DENIED** as to this issue but without prejudice to raise the issue in a subsequent dispositive motion.

## IV. Negligent Misrepresentation

The third and final cause of action alleged in the Complaint is Plaintiffs' claim for negligent misrepresentation. The Nevada Supreme Court has adopted the following definition of negligent misrepresentation from the Restatement (Second) of Torts § 552:

> One who, in the course of his business, profession or employment, or in any other [trans]action in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information."[39]

---

[36] Termination Letter, ex. 4 to Compl. (ECF No. 1-7).

[37] *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 614 (6th Cir. 2009) ("The exhibits attached to the complaint are considered part of the complaint for purposes of a motion to dismiss."); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

[38] In their reply brief, Defendants now take the position that the parties' agreements "are valid contracts that foreclose any unjust enrichment claim." Defs.' Reply 7 (ECF No. 19). The Court's assessment under Rule 12(b)(6) is confined to the pleadings, however, and Defendants' concession as to the validity of the consulting agreements is not actually part of the pleadings.

[39] *Halcrow, Inc. v. Eighth Jud. Dist. Ct.*, 302 P.3d 1148, 1153 (Nev. 2013), *as corrected* (Aug. 14, 2013) (quoting *Bill Stremmel Motors, Inc. v. First Nat'l Bank of Nev.*, 575 P.2d 938, 940 (1978)).

Defendants argue that Plaintiffs' negligent misrepresentation claims are subject to dismissal for a number of reasons, among them that the Complaint fails to state the negligent misrepresentation claim with the requisite particularity.

Federal Rule of Civil Procedure 9(b) requires a party alleging fraud to state with particularity the circumstances constituting fraud, though "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."[40] In this Circuit Rule 9(b) serves "(1) to alert defendants to the particulars of the allegations against them so they can intelligently respond; (2) to prevent 'fishing expeditions'; (3) to protect defendants' reputations against fraud allegations; and (4) to whittle down potentially wide-ranging discovery to only relevant matters."[41] To achieve these ends, a complaint sounding in fraud must "generally (1) specify the time, place, and content of the alleged misrepresentation; (2) identify the fraudulent scheme and the fraudulent intent of the defendant; and (3) describe the injury resulting from the fraud."[42] It is well-settled that "misrepresentation claims are a species of fraud, which must meet Rule 9(b)'s particularity requirement."[43]

The Court holds that the Complaint does not satisfy the Rule 9(b) pleading standard for Plaintiffs' negligent misrepresentation claims. The Complaint alleges the terms of the transaction negotiated by the parties in 2013 and identifies Kline as the "primary point of contact

---

[40] Fed. R. Civ. P. 9(b).

[41] *SFS Check, LLC v. First Bank of Delaware*, 754 F.3d 351, 358 (6th Cir. 2014) (citing *Chesbrough v. VPA, P.C.,* 655 F.3d 461, 466–67 (6th Cir. 2011)).

[42] *Id.* (citing *U.S. ex rel. SNAPP, Inc. v. Ford Motor Co.,* 532 F.3d 496, 504 (6th Cir. 2008)).

[43] *LT Int'l Ltd. v. Shuffle Master, Inc.*, 8 F. Supp. 3d 1238, 1244 (D. Nev. 2014) (construing the pleadings on a claim for negligent misrepresentation under Nevada law); *see also Thompson v. Bank of Am., N.A.*, 773 F.3d 741, 751 (6th Cir. 2014), reh'g denied (Dec. 24, 2014) (construing the pleadings on a claim for negligent misrepresentation under Tennessee law).

17

between Plaintiffs and [Logistics]."⁴⁴ The Complaint alleges the specific amounts and the timing of the payments Logistics agreed to make to Plaintiffs as part of the consulting agreements as well as the fact that Plaintiffs would not begin to receive payments for their services until May 2014.⁴⁵ The Complaint further alleges that just before the first payment became due, Kline notified Plaintiffs that Logistics did not have the funds to honor the consulting agreements.

Fatal to the claim is the Complaint's absence of any facts about what Kline specifically represented to Plaintiffs about Logistics's financial ability to live up to its bargain at the time they entered into the consulting agreements. The Complaint only states that Kline "represented to Plaintiffs that [Logistics] was capable of meeting the financial obligations of the Consulting Agreements" even though Defendants "knew, or should have known, that [Logistics] was not in a financial position, nor would it ever be in a financial position, to honor" the consulting agreements.⁴⁶ The Court finds that this "formulaic recitation" of the elements describes the content of the alleged misrepresentation in only the most conclusory terms and fails to allege the time and place of the misrepresentation altogether. For example, Plaintiffs have not identified any specific meeting(s) with Kline where he made the alleged misrepresentation or any document(s) or communication(s) Kline directed to Plaintiffs containing an alleged misrepresentation about Logistics's assets, revenues, or financial position. In short, Plaintiffs do not "specify the statement they contend is fraudulent" or identify the time and location of the

---

⁴⁴ Compl. ¶¶ 5, 6, 8.

⁴⁵ *Id.* ¶¶ 9, 10.

⁴⁶ *Id.* ¶¶ 26, 27; *see also id.* ¶ 16 (alleging that Kline "misrepresented to [Plaintiffs] the financial capability of [Logistics] to honor the Consulting Agreements at the time they were entered" in August 2013, and his representations to Plaintiffs "were false and/or misleading when made").

statement, and "explain why the statement [was] indeed untrue or a misrepresentation."[47] Without these particulars the Complaint fails "to alert defendants" to the specific allegations against them," deprives Defendants of the opportunity to "intelligently respond" to the allegations, and essentially invites a "fishing expedition" as the case proceeds to discovery.[48] Therefore, Defendants' Motion to Dismiss is **GRANTED** as to the negligent misrepresentation claim as to both Defendants.

Because the Complaint does not comply with Rule 9(b) of the Federal Rules of Civil Procedure, the Court finds it unnecessary to reach Defendants' other arguments for dismissal of the negligent misrepresentation claims.

## CONCLUSION

The Court holds that Plaintiffs have alleged a plausible claim for breach of the consulting agreements and an alternative claim for unjust enrichment against Logistics. The Complaint does not, however, allege Plaintiff's negligent misrepresentation claim with sufficient particularity. By virtue of the dismissal of the negligent misrepresentation claim, Defendant Ross Kline is dismissed as a party to this matter. Plaintiffs' claims for breach of contract and unjust enrichment against Logistics survive. Therefore, the Motion to Dismiss is **GRANTED IN PART, DENIED IN PART**.

    **IT IS SO ORDERED.**    s/ S. Thomas Anderson
                                                S. THOMAS ANDERSON
                                                UNITED STATES DISTRICT JUDGE

                                                Date: February 6, 2015.

---

[47] *Rautu v. U.S. Bank*, 557 F. App'x 411, 414 (6th Cir. 2014).

[48] *SFS Check, LLC*, 754 F.3d at 358.